**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NOEL MCARDLE-BRACELIN, Individually and**
**On Behalf of All Others Similarly Situated,**

                              **Plaintiff,**

     **v.**                                      **1:20-CV-861**
                                                   **(TJM/TWD)**


**CONGRESS HOTEL, LLC, VEEDER HOSPITALITY**
**MANAGEMENT, LLC, EMBASSY SUITES**
**FRANCHISE, LLC, and HILTON FRANCHISE**
**HOLDING, LLC, d/b/a Embassy Suites,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

                         **DECISION & ORDER**

     Before the Court is Defendants' Embassy Suites Franchise LLC and Hilton

Franchise Holding LLC's motion for judgment on the pleadings. Dkt. # 75.  The parties

have briefed the issues and the Court will decide the motion without oral argument.

**I.      BACKGROUND**

     Plaintiff Noel McArdle-Bracelin brings this proposed labor-law class action on behalf

of herself and others similarly situated as persons who worked for the "Defendants as non-

exempt servers, waiters, bartenders, waitstaff, room service attendants, and other non-

managerial service workers[.]"  Amended Complaint ("Amend. Complt."), dk. # 60, at ¶ 1.

Plaintiff generally alleges that Defendants do not "properly compensate non-exempt

1

service workers for all mandatory surcharges that should be remitted to them as gratuity wages.  Id.  Defendants allegedly charge a service fee for banquet services provided hotel customers, but fail to comply with New York law by distributing the proceeds from such fees to service employees.  Id. at ¶ 2.

Plaintiff worked as a breakfast server and banquet server for the Defendants, who operate hotels, from August 2016 to July 2018.  Id. at ¶ 7.  The proposed class includes "people who are or who have been employed by Defendants as non-exempt employees throughout the State of New York within the six years preceding the" Complaint's filing.  Id. at ¶ 8.  Plaintiff alleges that the Defendants are limited liability corporations headquartered in different states.  Id. at ¶ 10-13.  She further alleges that at the times relevant to the Amended Complaint, Defendants were "the agents and employees of their co-defendants and in doing the things alleged in this Complaint were acting within the course and scope of such agency and employment."  Id. at ¶ 14.  Plaintiff further alleges, on information and belief, that "Defendants, individually and/or jointly, own, operate, and manage hotels, restaurants, and resorts throughout the United States, including in New York."  Id. at ¶ 15.  She also alleges on information and belief that "Defendants jointly exercised control over Plaintiff and Class members with respect to their employment."  Id. at ¶ 17.  The Amended Complaint contends that Defendants served as Plaintiff's joint employers because "they jointly, directly, or indirectly, control the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and Class members."  Id. at ¶¶ 21-22.

Plaintiff alleges that Defendants provided her and the other members of the proposed class with itemized wage statements.  Id. at ¶ 30.  These statements, Plaintiff complains, did not include information required by New York's Wage Theft laws.  Id.  The

2

statements failed to provide the employer's phone number, and did not even "identify the name of the employer," but simply provided "'Embassy Suites" as the employer's name 'without naming the actual individual or legal name of the company that directly employs Class members." Id.  Plaintiff further contends that the wage statements did not include all of the written notice information, in English and Spanish, required by New York Labor Law § 195(1). Id. at ¶ 31.

Plaintiff alleges that businesses in the "hospitality industry" typically "impose gratuity charges in the range of 18% to 22% of the food and beverage bills." Id. at ¶ 32.  She claims that customers who pay such fees reasonably "believe those service fee surcharges are gratuities to be paid in their entirety to the service staff." Id.  Defendants paid Plaintiff a portion of this gratuity fee to supplement her wages. Id. at ¶ 33.  Billing to customers did not make clear what portion of the gratuity went to servers, however, and Plaintiff claims that nothing informed customers that not all fo the gratuity fee would go to the service staff. Id.  Plaintiff claims that she and other workers received 5% of the 20% service fees charged as a gratuity. Id. at ¶ 34.  Defendants do not explain to customers that not all of the service fees go to people like Plaintiff, even though they have "a policy and practice of retaining a portion fo the service fee and/or using a portion of the surcharges to pay non-service workers." Id.  Because of the discrepancy between the mandatory surcharge payments and the payments Plaintiff receives, Plaintiff contends that her wage statements are inaccurate. Id. at ¶ 37.  Plaintiff contends that she is part of a class of workers who have experienced such violations of wage laws. Id. at ¶¶ 47-56.

Plaintiff's Complaint raises four causes of action on behalf of the proposed class and sub-class.  Count One alleges failure to provide accurate itemized wage statements

3

pursuant to New York Labor Law ("NYLL") § 195.  Count Two alleges a violation of the notice and recordkeeping requirement of NYLL § 195.  Count Three charges improper retainer of service fees in violation of NYLL § 196-d.  The Fourth claim alleges unjust enrichment.

The moving Defendants, who distinguish themselves from the other Defendants because they are "franschisors" rather than "franchisees," filed the motion after service of the Amended Complaint.

## II.   LEGAL STANDARD

Defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2013).  In addressing Rule 12(b)(6) motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS

Defendants seeks dismissal on several grounds, which the Court will address in turn.

4

### A.      Joint Employer

Moving Defendants first argue that they cannot be liable on Plaintiff's claims brought under the NYLL because Plaintiff has not alleged facts sufficient to make plausible that they are joint employers.  The parties agree that the Fair Labor Standards Act ("FLSA") and the NYLL provide the same definition for employer and rely on definitions under the FLSA

The FLSA uses a very broad definition of employee; the statute's "definition of 'employ' stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency principles[.]"  Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).  To achieve the remedial aims of the statute and to comply with this definition, "the Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts[.]'"  Id. (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).  Courts should not rely on "'isolated factors, but rather upon the circumstances of the whole activity.'"  Id. (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).  FLSA employment is therefore "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  Id. at 141-42.  Because the FLSA and the New York Labor law "define 'employee' in 'nearly identical terms,'" a court will "'construe the NYLL definition as the same in substance as the definition in the FLSA.'"  Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 534 (2d Cir. 2015)).

Plaintiffs allege that the moving Defendants are their joint employers.  The joint

employer "doctrine imposes liability for violations of labor or employment laws not only on the nominal employer buy also on entities that, although legally separate from the nominal employer, 'handle certain aspects of the[] employer-employee relationship jointly.'" Div. 1181 A.TU.-N.Y. Emples. Pension Fund v. City of New York Dep't of Educ., 910 F.3d 608, 619 (2d Cir. 2018)(quoting Arculeo v. On-site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)).

Courts typically use one of two tests to determine whether a party is an employer within the meaning of the FLSA.  Ocampo v. 455 Hospitality LLC, No. 14-cv-9614, 2021 U.S. District LEXIS 178875, at *16 (S.D.N.Y. Sept. 20, 2021).  The "formal control" test asks "whether the alleged employer '(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Velez v. Sanchez, 693 F.3d 308, 326 (2d Cir. 2012) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984); see also, Ocampo, 2021 U.S. Dist. Lexis 178875, at *16 (quoting Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F.Supp.3d 830, 839 (S.D.N.Y. 2020)).  This test does not provide "a 'rigid rule for the identification of an FSLA employer.'" Ocampo, 2021 US Dist LEXIS 178875 at 17 (quoting Barfield, 537 F.3d at 143).  The factors are "'a nonexclusive and overlapping set of factors' to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.'" Id. (quoting Barfield, 537 F.3d at 143).

An employer can also have "functional control" over an employee.  Ocampo v. 455 Hospitality LLC, 2016 U.S. Dist. LEXIS 125928, at *18 (S.D.N.Y. Sept. 14, 2016) (citing Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 72 (2d Cir. 2003)).  This test applies a

6

number of factors:

> "(1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete job that was integral to the alleged employers' process of production; (4) whether the responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers."

Id. at *18-19 (quoting Olvera v. Bareburger Grp., LLC, 73 F.Supp.3d 201, 205-06 (S.D.N.Y. 2014) (alterations to quotation in original)).

Moving Defendants argue that Plaintiff's allegations are insufficient to state a claim that the franchisor Defendants served as joint employers with the other Defendants. Defendants argue that Plaintiff has failed plausibly to allege formal control.  She has not alleged, they claim, that moving Defendants had hiring and firing power over her, that they supervised and controlled her work schedule or employment conditions, set her pay rate or the method of payment, or maintained any employment records.  Defendants also contend that Plaintiff has not alleged functional control, as she has not alleged non-conclusory facts that Plaintiff used Defendants' premises or equipment to do her work, any facts that show that responsibility under the contracts could pass from one subcontractor to another without changes, and no facts to show that the moving Defendants supervised Plaintiff's work.  Plaintiff responds that she has pleaded facts sufficient to allege joint employment under both the formal and functional control tests.  She contends that she has alleged "some level of control" over conditions of employment by the moving Defendants, that Defendants mandated particular training for managers before franchised hotels could open, and that the training required caused Defendants to exert control over working

conditions.  As for the functional control test, Plaintiff argues that Defendants assert control

over franchisees by requiring them to use particular business software and hardware,

mandating particular training and standards of operation and workers' appearance,

"requir[ing] Veeder Defendants to conform to all laws and regulations applicable to hotels

or business in general, and providing training to the franchisor's general managers and

other personnel before hotels can even open.  In general, Plaintiff argues, moving

Defendants' business could not operate with her work, and she has therefore alleged joint

employment.

The Court notes that "the 'economic reality' test encompasses the totality of the

circumstances, no one of which is exclusive."  Herman v. RSR Sec. Servs., 172 F.3d 132,

139 (2d Cir. 1999).  This focus on all of the circumstances recognizes that courts are to

"avoid having the" economic realities "test confined to a narrow legalistic definition."  Id.

The statutes also do "not require continuous monitoring of employees, looking over their

shoulders at all times, or any sort of absolute control of one's employees."  Id.  An

employer's "[c]ontrol may be restricted, or exercised only occasionally, without removing

the employment relationship from the protections of the FLSA, since such limitations on

control 'do[] not diminish the significance of its existence.'" Id. (quoting Donovan v.

Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982)).

With respect to the relationship between the various Defendants in this case,

Plaintiff alleges that:

> 24.    Hilton Franchise Holding LLC and/or Embassy Suites Franchise LLC
> ("Embassy Suites") provides and licenses "Embassy Suites" franchise
> agreements to companies such as Veeder Hospitality Management LLC
> and/or Congress Hotel LLC ("Veeder").  In such licenses, Embassy Suites
> licenses the "Embassy Suites Hotel system" which consists of the elements,

8

including know-how, that Embassy Suites designates to hotels operated by
companies such as Veeder.  That "system" includes use of Embassy Suites'
brand and trademarks, access to Embassy Suites' reservation system,
advertising, publicity and other marketing programs and materials.

25.    The Embassy Suites license further requires franchisers like Veeder to
purchase, install, and use required business software and hardware systems
set out by Embassy Suites.  Embassy Suites requires franchisor companies
like Veeder to use OnQ, which is Hilton's business system comprised of
software that includes proprietary property management components,
reservation components, revenue management components, rate and
inventory components, "learning management component[s]," and other
components that Embassy Suites considers necessary to support activities
such as hotel operations.  That OnQ system includes connections to Hilton's
reservation offices and travel planners worldwide.  The OnQ system is
proprietary and is not available from any other source besides Embassy
Suites.

26.    . . . the Embassy Suites "system" that is licensed by Embassy Suites to
franchisor companies like Veeder also includes requirements for training
programs and materials, standards, specifications and policies for the hotels'
operation, workers' appearance, and service of the hotels.  The Embassy
Suites license also requires franchisor companies like Veeder to conform to
all laws and regulations applicable to hotels and businesses in general.

27.    Embassy Suites' required training programs apply to Veeder's general
manager and other key personnel at Veeder, and those Veeder employees
must complete those training programs before the hotel is allowed to open.
Embassy Suites also periodically offers and provides additional training to
Veeder's employees, including assistance in recruiting employees to work in
their hotels and other trainings that affect the working conditions of Class
members.

28.    In other words, Embassy Suites institutes systems and practices at their
hotels that control and affect, either directly or indirectly, the employment
conditions of Plaintiff and Class members.

Amend. Complt. at ¶¶ 24-28.

The Court finds that these allegations do not meet the formal control test; Plaintiff

has not alleged that the moving Defendants had any power to hire and fire workers,

determine the rate and method of payment for such workers, or kept any employment

9

records.  See Carter, 735 F.2d at 12.  While the allegations above indicate some degree fo control over the conditions of employment, there are no allegations that the moving Defendants set work schedules.  Taken as whole, such allegations do not plausibly allege a degree of formal control over the terms and conditions of employment that make plausible joint employment under the formal control test.

As to the functional control test, courts are to consider the six factors outlined by the courts for that test, taking into consideration the particular situation.  Courts have found that "numerous of these factors 'are difficult to translate to the franchisee-franchisor context' and thus do not deserve 'much weight' in the Court's analysis."  Rivers v. Int'l House of Pancakes, No. 20-CV-2471, 2021 U.S. Dist. LEXIS 42778, at *9 (S.D.N.Y. Mar. 8, 2021) (quoting In re Domino's Pizza Inc., No. 16-CV-2492, 2018 U.S. Dist. LEXIS 169607 (S.D.N.Y. Sept. 30, 2018)).  Courts still apply the test in such situations, emphasizing the factors which are relevant.  Id.

Plaintiff points to Ocampo v. 455 Hospitality, LLC to argue that she has pled facts sufficient to make plausible that the moving Defendants were joint employers within the meaning of the FLSA.  The court in Ocampo applied the functional control test.  The plaintiffs in that case were "banquet servers, housemen, a houseman supervisor, banquet supervisors, restaurant waiters, a room service waiter, housekeepers, and a kitchen sous chefs" who worked at a Doubletree by Hilton hotel in Tarrytown, New York.  Ocampo, 2016 U.S. Dist. LEXIS 125928 at *2.  Plaintiff's sued both the owner and operator of that hotel and franchisors that "granted licenses to various franchisees to operate Doubletree by Hilton Hotels in New York under the Doubletree 'System.'"  Id.  These franchisor defendants moved to dismiss the complaint, arguing that Plaintiff had not sufficiently alleged that they

10

served as joint employers with the hotel where the plaintiffs ostensibly worked.

The court applied the economic realities test and concluded that plaintiff's amended complaint "pled facts to at least satisfy the functional control test." Id. at 19.  Plaintiffs did not attempt to argue that they had satisfied the formal control test. Id. at 19 n.8.  The court found that the facts plausibly alleged were:

> that Franchisor Defendants: (1) imposed mandatory training programs for employees at the Hotel, which was a pre-condition of the Hotel's opening, and a requirement for ongoing operations; (2) "maintain[ed] the right to inspect the Hotel at any time"; (3) imposed mandatory record keeping requirements on 455 Hospitality; (4) established "standards and controls" that include "standards, specifications[,] and policies for construction, furnishing, operation, appearance, and service of the Hotel,"' (5) required that 455 Hospitality use a particular business software system to track the Hotel's revenue and operations; (6) retained the unlimited "right to make changes" to the manner in which the Hotel is operated; (7) "regularly perform[ed] both scheduled and unannounced audits and inspections of the Hotel . . . to review 455 Hospitality's compliance with [their] financial recordkeeping requirements" and "QA standards," which incentivized good performance by Hotel employees, and punished poor performance; (8) "maintained the right to terminate the Doubletree franchise" in the event that QA requirements are not met, "where thereby causes the termination of the employers' employment"; and (9) were aware that Plaintiffs were not paid gratuities owed to them, but "failed to stop the unlawful wage practices and policies that were perpetrated.

Id. at 20-21 (internal citations omitted).  These allegations, the court found, represented "'economic realities'" sufficient "plausibly" to "support an inference that Franchisor Defendants exerted control over Hotel employees." Id. at 24.  The allegations were similar to those that survived motions to dismiss in other joint-employer cases. Id. at 24-25 (citing Cordova v. SCCF, Inc., No. 13-CV-5665, 2014 U.S. Dist. LEXIS 97388, 2014 WL 3512838, at *5 (S.D.N.Y. July 16, 2014); Cano v. DPNY, Inc., 287 F.RD. 251, 260 (S.D.N.Y. 2012); Orozco v. Plackis, No. 11-CV-703, 2012 U.S. Dist. LEXIS 91916, 2012 WL 2577522, at *2-3, 6 (W.D. Tex. July 3, 2012)).  The facts in the amended complaint, the court found, plausibly alleged "training and recordkeeping requirements" and "monitoring of Hotel

employees" that indicated that the franchisor defendants exerted control over employees. Id. at 26.  The franchisors also retained the "right to terminate the franchise in the event of non-compliance with QA requirements."  Id. at 27.  The court therefore denied the motion to dismiss.

Making all inferences in the Plaintiff's favor, accepting as true all well-pleaded allegations, and recognizing that the motion here is one to dismiss and not one based on the record after discovery, the Court finds that Plaintiff has pled facts sufficient to make plausible her claim that the moving Defendants were joint employers.  Like the Plaintiff in Ocampo, Plaintiff has alleged that the franchisor employers exerted a degree of control over the conditions and terms of her employment sufficient to move to the discovery stage. The economic realities alleged in the Amended Complaint demonstrate that Veedor, the franchisee, operated under terms created and regulated by the franchisor Defendants. Plaintiff alleges that the reservation system, appearance, quality control procedures, training of management, and initial operation of the hotel came under the direction of the franchisors.  Plaintiff alleges that the license between Veedor and the franchisor Defendants established terms for operation, worker appearance, and the service the hotels provided.  Such allegations are sufficient, if barely, to state a claim.[1]  Plaintiff's factual claims here are more than "'mere boilerplate allegations that [a defendant meets the various prongs of the economic reality tests stated solely upon information and belief and

---

[1]The Court notes that Defendants do not contend that pleading a claim of joint employment would be a legal impossibility.  If the Court granted the motion in this respect, the Court would permit the Plaintiff to re-plead the claim and offer more facts.  Permitting such re-pleading would likely lead to another motion to dismiss, which would mean more delays in this litigation and more costs for all the parties.  Such are the consequences of requiring "plausibility" in pleading.

without any supporting details,'" which courts have found insufficient to state a claim that parties were joint employers.  Acharya v. 7-Eleven, Inc., No. 18cv8010, 2019 U.S. Dist. LEXIS 215425, at *6 (S.D.N.Y. Dec. 13, 2019) (quoting Tracy v. NVR, Inc., 667 F.2d 244, 247 (W.D.N.Y. 2009)).[2]

The Court will therefore deny the motion in this respect.

### B.    Group Pleading

Defendants next argue that Plaintiff's Amended Complaint uses impermissible group pleading and must be dismissed for violating Federal Rule of Civil Procedure 8.  Plaintiff's pleading, they complain, makes allegations against all Defendants without distinguishing particular conduct.

Defendants' argument here relies on Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint offer "a short and plain statement of the claim showing the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Courts have found that a complaint

---

[2]The Court acknowledges that Defendants have pointed to other cases from this Circuit that reach different conclusions about whether the facts pled in a complaint sufficiently alleged joint employment in the context of a franchisee/franchisor relationship. See, Acharya v. 7-Eleven, Inc., No. 18cv8010, 2019 U.S. Dist. LEXIS 215425, at *6 (S.D.N.Y. Dec. 13, 2019); Derrick v. Hudson Hall LLC, 2020 U.S. Dist. LEXIS 194833 (S.D.N.Y. Oct. 19, 2020); Rivers v. Int'l House of Pancakes, 2021 U.S. Dist. LEXIS 42778 (S.D.N.Y. Mar. 8, 2021).  The Court respectfully finds the cases offered by the Plaintiff more persuasive, taking into consideration the early nature of the litigation, the lack of discovery undertaken in these matters, and instructions from higher courts that indicate that the question of joint employment is a fact-intensive inquiry that relies on the particular relationships at issue in each case.  The Court is unpersuaded by Defendants' attempts to distinguish Plaintiff's cases, as the Court is unconvinced that Plaintiff did not plead sufficient facts because she did not plead all of the facts that those plaintiffs did. The Court is also unpersuaded by Defendants' argument that the Court should reject the cases Plaintiff cites because they were decided before the cases Defendants cite.  All of the cases apply the same legal standard, and nothing indicates that the standard changed in the time between the cases the parties cite.

that " relies on 'group pleading' and 'fail[s] to differentiate as to which defendant was involved in the unlawful conduct [is] insufficient to state a claim." Derrick, 2020 U.S. Dist. LEXIS 1974833 at * 21 (quoting Adamou v. Cty of Spotsylvania, VA., No. 12 Civ. 7789 (ALC) (SN), 2016 U.S. Dist. LEXIS 32505, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)).  The purpose of this standard is to "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" Atuahene v. City of Hartford, 10 Fed. Appx. 13, 34 (2d Cir. 2001) (quoting Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)).  A complaint fails this standard when the pleading "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct."  Id.

   At the same time, of course, "'nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'" Bruce Kirby, Inc. v. Quarter Moon, Inc., No. 3:17-cv-1389, 2018 U.S Dist. LEXIS 125847, at *3 (D. Conn. July 27, 2018) (quoting Hudak v. Berkley Grp., Inc., No. 3:13-cv-89, 2014 U.S. Dist. LEXIS 8168, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014)).  "The Second Circuit has found dismissal appropriate pursuant to Rule 8 when a complaint is 'unintelligible' and fails to 'explain[] what conduct constituted the violations, which defendants violated which statutes . . . or how the alleged violations harms [the plaintiff].'" Vanton Group LLC v. Yangpu NGT Indus. Co., 2015 U.S. Dist. LEXIS 86653, at *13 (S.D.N.Y. July 2, 2015) (quoting Strunk v. U.S. House of Representatives, 68 F.App'x 233, 235 (2d Cir. 2003)).  In initiating the litigation, a plaintiff "is not required to plead specific details as to which entity did what during the alleged course of misconduct." Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC, 332 F.Supp.3d 729, 771 (S.D.N.Y.

14

2018).  Indeed, "[i]t may be especially appropriate to refer to defendants collectively where the defendants are related corporate entities, as opposed to unaffiliated entities ro individuals, accused of acting in concert."  <u>Kashef v. BNP Paribas SA</u>, No. 16-cv-3228, 2021 U.S. Dist. LEXIS 79592, at *6 (S.D.N.Y. April 26, 2021).  "As long as the plaintiff gives a factual basis for the joint activity by the defendants, a defendant has adequate notice of the claims against it."  <u>Id.</u> at *7.

Defendants here argue that Plaintiff's pleading "fails to distinguish between any of the four Defendants, and instead conclusorily alleges (upon information and belief) that the 'Defendants' own, operate, and manage hotels throughout New York State and 'jointly exercised control over Plaintiff and Class members with respect to employment.'" Defendants' Brief, dkt. # 75-1 (quoting Amend. Complt. at ¶¶ 15, 17, and 23).  Defendants contend that such pleading practice fails to state a claim.

The Court is not persuaded by this argument.  As explained, asserting claims against a group of defendants is appropriate if those defendants allegedly acted in concert to violate a Plaintiff's rights.  A complaint that pleads enough facts to make claims of such wrongdoing plausible need not then describe each defendant's particular role in detail in order to avoid dismissal on "group pleading grounds."  As explained, dismissal on Rule 8(a) grounds occurs when a complaint "is unintelligible and fails to explain[] what conduct constituted the violations, which defendants violated which statutes . . . or how the alleged violations harms [the plaintiff]."  <u>Vanton Group LLC</u>, 2015 U.S. Dist. LEXIS 86653 at *13 (internal citations omitted).  Defendants here do not even attempt to assert that the pleading is unintelligible or that it fails to assert the conduct that violated Plaintiff's rights. The claims here are clear: Plaintiff alleges that the moving Defendants were her employers

15

by virtue of the joint employment doctrine, and that they are responsible for failing to provide her with the pay for gratuities she was due.  Defendants can certainly offer a defense to such claims.  The pleading is sufficient, and the Court will deny the motion in this respect as well.[3]

### C.  Unjust Enrichment

Finally, Defendants contend that Plaintiff has failed to allege facts sufficient to support an unjust enrichment claim.  They contend that Plaintiff has not alleged that they played any role in the wage notices and pay statements that allegedly deprived Plaintiff of pay she was due, and thus cannot prevail on an unjust enrichment claim against them.  Plaintiff responds that she has sufficiently alleged that Defendants were her joint employers, and that she has alleged that Defendants were unjustly enriched because Plaintiff's employers kept gratuities that should have gone to her and her co-plaintiffs.  The parties agree that New York law applies.

In New York, a claim for unjust enrichment requires a showing that "'(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'"  GFRE,

---

[3]The Defendants cite to Derrick, 2020 U.S Dist. LEXIS 194833, arguing that the Court in that case, which found that the plaintiff had not plead joint employment adequately, had also engaged in improper group pleading.  The Court has already concluded that Plaintiff here has properly alleged joint employment.  This Court finds that an argument concerning improper "group pleading" would be more appropriate if Plaintiff had failed sufficiently to plead joint employment.  Of course, a Rule 8 "group pleading" argument would not be necessary in a case where dismissal came became a plaintiff did not plead joint employment.  The Court would suggest that "group pleading" motions are best reserved for situations where the pleading is unintelligible or utterly fails to inform individual defendants of the conduct in which they allegedly engaged.  To use the doctrine in the circumstances of this case would be to encourage the sort of fact pleading the federal courts still purport to discourage.

16

Inc. v. U.S. Bank, N.A., 130 A.D.3d 569, 570, 13 N.Y.S.2d 452, 454 (2d Dept. 2015)

(quoting Mobarak v. Mowad, 117 A.D.3d 989, 1001, 986 N.Y.S.2d 539 (2d Dept. 2014)).

"Such a claim is undoubtedly equitable and depends upon broad considerations of equity

and justice." Paramount Film Distributing Corp. v. State, 30 N.Y.2d 415, 421, 334 N.Y.S.2d

388, 393 (1972).  Courts consider "if a benefit has been conferred on the defendant under

mistake of fact or law, if the benefit still remains with the defendant, if there has been

otherwise a change of position by the defendant, and whether the defendant's conduct was

tortious or fraudulent." Id.  Such a claim, however, "is not a catchall cause of action to be

used when others fail." Corsello v. Verizon, N.Y., Inc., 18 N.Y.3d 777, 790, 944 N.Y.S.2d

732 (2012).  The tort applies "only in unusual situations when, though the defendant has

not breached a contract nor committed a recognized tort, circumstances create an

equitable obligation running from the defendant to the plaintiff." Id.  Unjust enrichment

applies when "the defendant, though guilty of no wrongdoing, has received money to which

he or she is not entitled." Id.  Such a claim cannot serve to "[duplicate] or [replace], a

conventional contract or tort claim." Id.

As for her unjust enrichment claim, Plaintiff alleges that:

82.   At all relevant times, Plaintiff and Service Fee Sub-Class members bestowed
a benefit in the form of service which is customarily 'tipped' in addition to
hourly wages that are regularly paid to service workers.

83.   Because of Defendants' non-payment and underpayment to service workers
of all sums denominated as service fees, Defendants knowingly receive and
retain funds that patrons intend to be paid in full to the waitstaff and other
non-managerial service workers.

84.   In equity and good conscience, said funds belong to Plaintiff and Service Fee
Sub-Class members, not Defendants or other non-service workers employed
by Defendants.

85.   Defendants will obtain such benefit without adequately compensating Plaintiff
and Service Fee Sub-Class members if Defendants are permitted to retain
the unpaid service fee surcharges collected from their customers without

17

remitting the entirety of the service fee payments to their intended
beneficiaries–the non-managerial service workers.

Amend. Complt. at ¶¶ 82-85.

As a general matter, the Court finds that this cause of action makes plausible that
Plaintiff would have right to relief for unjust enrichment.  The Amended Complaint alleges
that Plaintiff worked for the Defendants in a job that entitled her to gratuities.  The
Amended Complaint further alleges that Defendants kept an unreasonable portion of the
gratuities that customers paid on their bills, thus depriving Plaintiff and her co-workers of
money they were due as part of their employment.  Equity would require that such funds be
returned to the people who earned them.

Defendants' position is that Plaintiff has not alleged facts which would indicate that
they had any involvement in the unjust retention of funds owed the Plaintiff that would
make them liable for an unjust enrichment claim.  They argue that "Plaintiff fails to allege
facts showing <u>any</u> connection between her and the Franchisor Defendants, let alone an
'attenuated' one."  In New York, "'[t]he essential inquiry in any action for unjust enrichment
or restitution is whether it is against equity and good conscience to permit the defendant to
retain what is sought to be recovered."  <u>Sperry v. Crompton Corp.</u>, 8 N.Y.3d 204, 215 (N.Y.
2007) (quoting <u>Paramount Film Distrib. Corp.</u>, 30 N.Y.2d at 421).  "[A] plaintiff need not be
in privity with the defendant to state a claim for unjust enrichment[.]" <u>Id.</u>  Still, no claim
exists when the relationship between the parities "is too attenuated."  <u>Mandarin Trading
Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182 (N.Y. 2011).  "'[A] claim will not be supported
unless there is a connection or relationship between the parties that could have caused
reliance or inducement on the plaintiff's part.'" <u>McMurray v. Hye Won Jun</u>, 168 A.D.3d 435,

435 (1st Dept. 2019) (quoting <u>Georgia Malone & Co., Inc. v. Reider</u>, 86 A.D.3d 406, 408 (1st Dept. 2011)).

The Court has found that Plaintiff has alleged facts sufficient to make plausible that moving Defendants jointly employed the Plaintiff within the meaning of the FLSA.  The Amended Complaint alleges that moving Defendants played a role in determining the terms and conditions of employment.  The unjust enrichment account sufficiently alleges that claim, and the allegations include the moving Defendants among those who violated Plaintiff's rights in that sense.  Whatever discovery reveals, at this time the Court must conclude that Plaintiff has alleged facts sufficient to make plausible that moving Defendants had the sort of relationship with the Plaintiff that would cause her to rely on promises about pay from the moving Defendants.  She has also sufficiently alleged that moving Defendants played a role, as joint employer, in creating the policies about which she complains.

Defendants cite to <u>Hugee v. SJC Group, Inc.</u>, No. 13 Civ. 0423, 2013 U.S. Dist. LEXIS 116471 (S.D.N.Y. Aug. 13, 2013), in support of their position that Plaintiff has not alleged facts sufficient to state a plausible unjust enrichment claim under New York law. Plaintiff, who worked as a security guard in New York, sued his employer for violations of the FLSA and NYLL, as well as for unjust enrichment.  He sued both his nominal employer, SJC Group, Inc. ("SJC") and NESCTC Security Agency ("NESCTC").  <u>Id.</u> at *2.  SJC allegedly served as subcontractor for NESCTC.  <u>Id.</u> at *4.  NESCTC moved to dismiss the Complaint against the company.  <u>Id.</u> at *3.  NESCTC first argued that Plaintiff had not alleged joint employment, and NESCTC therefore could not be liable under either the FLSA or NYLL.  After a thorough analysis employing the legal standards discussed above,

the court concluded that plaintiff had failed to allege joint employment and dismissed the FLSA and NYLL claims.  Id. at *9-*32.  In a brief analysis, the court concluded that "Plaintiff does not allege that NESCTC 'requested, approved, supervised, agreed to pay for, or assumed any other obligations' with respect to his employment.'" Id. at 33 (quoting Vertex Const. Corp. v. T.F.J. Fitness, No. 10-cv-683, 2011 U.S. Dist. LEXIS 134353, at *13, *14 (E.D.N.Y. Nov. 23, 2011)).   The plaintiff also failed to allege that NESCTC benefitted from the allegedly illegal conduct or engaged in any behavior connected to that conduct.  Id. at *34.

Defendants' reliance in Hugee is misplaced, largely because Hugee concluded that NESCTC was not a joint employer with the other defendants. Under those circumstances, alleging a relationship and promises on which a plaintiff could rely is much more difficult. Here, however, Plaintiff has demonstrated joint employment, which creates a closer relationship that is far more direct that the one alleged in Hugee.

The Court will therefore deny the motion in this respect as well.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Embassy Suites Franchise LLC and Hilton Franchise Holding LLC's motion to dismiss, dkt. # 75, is hereby DENIED.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: February 17, 2022

20